UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA A., *et al.*, <br><br>    Plaintiffs, <br><br> v. <br><br> CITY OF SAN DIEGO, SHELLY ZIMMERMAN, and DOES 1-100, <br><br>    Defendants. | Civil No. 14cv1942 L (WVG) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF No. 5]** |

Defendants City of San Diego and Shelly Zimmerman move to dismiss plaintiffs'[1] complaint in its entirety. The motion has been fully briefed and is decided on the papers submitted under Civil Local Rule 7.1(d)(1).

**I.    Background**

San Diego Ordinance O-18885 places certain businesses and occupations under the direct regulatory authority of the police. SAN DIEGO MUN. CODE ("MC"), Ch. 3, Art. 3, Div. 1, § 33.0101 (2000). The ordinance states that the "*Chief of Police* shall make, or cause to be made, regular inspections of all police-regulated businesses." *Id.* § 33.0103(a). "Any police code

---

[1]    The 30 adult entertainment plaintiffs include Tanya A., Stephanie B., Angela C., Mindy C., Diana D., Katelynn D., Heather D., Valeria E., Tiana E., Bereniz F., Sara G., Martiza G., Crystal H., Clarrise J., Emilia J., Andrea L., Renee L., Chloe L., Kristinia M., Mallory M., Brittany M., Zinnia P., Chelsea S., Lindsay T., Mariya W., Linda E., Brianna H., Rowsanna M., Jennifer S., and Angela T.

compliance officer assigned by the *Chief of Police* to conduct inspections shall have free access to any police-regulated business during normal operating hours." *Id.* § 33.0103(b). Police-regulated businesses must acknowledge that the police have a right of reasonable inspection to enforce the ordinance at the time they apply for a police permit to operate their business. *Id.* § 33.0103(c). Further, it is "unlawful for any *permittee* or *employee* to prevent or hinder any police code compliance officer from conducting an inspection." *Id.* § 33.0103(b). The right of reasonable inspection "includes the right to require identification from *responsible persons* or *employees* on the *premises*," and the refusal to allow inspection "upon reasonable demand or the refusal to show identification by *responsible persons* or *employees* is grounds for the suspension, revocation, or other regulatory action against the *police permit*." *Id.*

One such police-regulated business is the "nude entertainment business," which is further regulated under § 33.3601 *et seq.* of the Municipal Code. The purpose of this specific division of the Code is to protect the public by providing minimum standards, "including the prevention of prostitution, obscenity, lewd acts, money laundering, and the infiltration of organized crime and its associated problems." MC § 33.3601. The Municipal Code also explains that it is not enacted "to deny adults access to adult oriented materiels protected by the First Amendment, or to deny access by the distributors and exhibitors of adult oriented entertainment to their intended market." *Id.*

Plaintiffs are all adult entertainers at two San Diego adult entertainment establishments, Cheetahs Gentleman's Club ("Cheetahs") and Club Expose ("Expose"). According to the Complaint, on July 15, 2013, approximately 15 San Diego police officers conducted an inspection of Cheetahs; on March 6, 2014, approximately ten San Diego police officers again inspected Cheetahs; and a similar inspection was conducted at the same time at Expose in San Diego, with approximately five police officers involved. In each instance, the police officers were wearing sidearms and bullet proof vests. Some officers were stationed at the entrances and exits of each location. Other officers entered the entertainers' private dressing rooms. The plaintiff adult entertainers were not permitted to leave the establishment during the inspection.

While in the dressing rooms, officers questioned each of the entertainers; required the

entertainers to provide their entertainer permits, drivers' licenses, and social security numbers; and inquired whether the entertainers had tattoos or body piercings. In addition, the police officers took photographs of different parts of the adult entertainers' semi-nude bodies, and certain officers made arrogant and demeaning remarks.

On July 17, 2014, plaintiffs initiated this action in the Superior Court of the State of California, in and for the County of San Diego against the City of San Diego, Chief of Police Shelly Zimmerman, and a number of Doe Defendants ("Defendants"). The Complaint alleges violation of California Civil Code § 1708.8(c); false imprisonment; violation of California Civil Code § 52.1; unreasonable search and seizure of person under 42 U.S.C. § 1983; negligence; failure to properly train under 42 U.S.C. § 1983; and ratification by an official with final policymaking authority under 42 U.S.C. § 1983. On August 20, 2014, Defendants removed the case to this Court and now move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted). In fact, the court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).[2] Courts may also take judicial notice of "'matters of public record.'" *Lee v. City of Los Angeles*, 250 F. 3d 668, 688-89 (9th Cir. 2001). The court may consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

**III.    Discussion**

    **A.    Initial Arguments**

        **1.    Use of Pseudonyms**

As noted above, plaintiffs are using their first names and last initials to identify themselves. Prior to removal to this court, the Superior Court granted plaintiffs' ex parte

---

[2] In their reply to plaintiffs' response, defendants seek judicial notice of excerpts from City Ordinance O-16812, adopted on February 23, 1987, and City Ordinance O-18885, adopted on November 20, 2000. The Ordinances are matters of public record and plaintiffs have not objected to the introduction of the Ordinances. Accordingly, the Court grants defendants' request for judicial notice.

4

14cv1942

application to proceed as pseudonymous plaintiffs. Nevertheless, defendants assert that plaintiffs cannot proceed using a pseudonym because they have not received leave from this Court to do so. Defendants further contend that the use of pseudonyms should only be granted "in an unusual case, where there is a need for the cloak of anonymity." *U.S. v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008)

"All injunctions, orders, and other proceedings in an action prior to its removal remain in full force and effect until dissolved or modified by the federal court." 28 U.S.C. § 1450.  In other words, "[w]hen a case is removed the federal court takes it as though everything done in the state court had in fact been done in the federal court." *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 795 (9th Cir. 1996) (quoting *Savell v. Southern Ry Co.*, 93 F.2d 377, 379 (5th Cir. 1937).

Here, because the state court granted plaintiffs' request for anonymity prior to removal, and this Court has no reason to dissolve or modify the state court's decision, plaintiffs may properly proceed under the pseudonym "Jane Doe" and "shall hereafter be referred to only by a first name and last initial in all pleadings and correspondence, at all hearings and in any other matters before the Court in this action." (Notice of Removal, Exh. A, July 18, 2014 Order.)

### 2. Use of Doe Defendants

Defendants contend that plaintiffs cannot use "Doe Defendants" to vicariously impose liability because a federal cause of action that fails to name or identify a defendant is insufficient for liability. According to defendants, the use of "John Doe" defendants is simply not cognizable in federal courts under the Federal Rules of Civil Procedure. However, as plaintiffs correctly note, the use of "John Doe" defendants is proper in federal court where, if "the identity of the alleged defendants will not be known prior to the filing of a complaint[,] . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

Plaintiffs cannot always be expected to know the identities of the unnamed officers involved in the complained of inspection without the assistance of discovery. Additionally, it is

likely that discovery will uncover the identity of the unnamed officers. Accordingly, plaintiffs are permitted to use "Doe defendants" in their complaint. However, plaintiffs are admonished to promptly name and serve the Doe defendants once their identity is obtained.

"If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. The 120–day period for service of the summons and complaint applies to Doe defendants. *See Morris v. Barra*, 2012 WL 1059908, at *2 (S.D. Cal. Mar.28, 2012). Further, the filing of an amended complaint does not toll the service period, *i.e.,* the filing of an amended complaint does not provide an additional 120 days for service. *See* Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1137, at 377 (2015). However, an amended complaint that adds new defendants does provide a 120-day period for service upon the newly added defendants only. *Id.*

### B.     Plausibility

Defendants seek to dismiss the complaint because it fails to meet the basic pleading requirement of plausibility. As the *Twombly* Court noted, "some threshold of plausibility must be crossed at the outset." *Twombly*, 550 U.S. at 558. And as the *Iqbal* Court stressed, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

In seeking to dismiss plaintiffs' complaint because of its supposed vague and conclusory allegations, defendants have used a wide brush to paint the complaint in its entirety as nonplausible. Rather than consider the alleged global pleading inadequacies of the complaint, the Court will review each cause of action to determine whether plaintiffs have sufficiently met the pleading standards under *Iqbal* and *Twombly*.

### C.     California Torts Claim Act

The California Tort Claims Act governs the filing of all state law claims for money damages against a public entity or employee, and requires that any such claim first be filed with the public entity as a prerequisite to asserting the claim in court. CAL. GOV. CODE § 945.5. A potential claimant has 180 days after accrual of the cause of action to file a claim for injury to

person or property with the public entity, after which, if expired, a claimant must file an application for leave to present a late claim.  CAL. GOV. CODE § 911.2(a).

Defendants contend and plaintiffs Jennifer S. and Angela T. concede, they failed to timely file claims with the City. Accordingly, Jennifer S.'s and Angela T.'s state law claims are dismissed without prejudice. This dismissal does not apply to the remaining plaintiffs state law claims or any of plaintiffs' claims brought under 42 U.S.C. § 1983.

### D.   Civil Code Section 1708.8

As noted above, plaintiffs allege that they were falsely imprisoned during the inspections at Cheetahs and Expose and during that time, certain officers took photographs of the entertainers' bodies. Plaintiffs assert that defendants violated Civil Code §1708.8(c) which provides: "An assault or false imprisonment committed with the intent to capture any type of visual image, sound recording, or other physical impression of the plaintiff is subject to subdivisions (d), (e), and (h)." In addition, plaintiffs contend that the alleged conduct of the officers is not within the scope of Government Code § 821.6 immunity because defendants' conduct was not part of a criminal investigation or disciplinary action and they exceeded the scope of the investigation.

"Government tort immunity applies to intentional tortious conduct unless the immunity statute provides otherwise." *Richardson-Tunnell v. School Insurance Program for Employees*, 157 Cal. App.4th 1056, 1062 (Cal. Ct. App. 2008)(citing *Gates v. Superior Court*, 32 Cal. App.4th 481, 510 (1995). Under California Government Code § 821.6, "[a] public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." *Gillian v. City of San Marino*, 147 Cal. App.4th 1033, 1048 (2007).

For purposes of § 821.6 immunity, investigations are considered to be part of judicial and administrative proceedings. *Kemmerer v. County of Fresno*, 200 Cal. App.3d 1426, 1436-1437 (1988). Government Code section 821.6 immunizes not only the act of filing or prosecuting a

judicial or administrative complaint, but also extends to actions taken in preparation for such formal proceedings. *Gillian*, 147 Cal. App.4th at 1048. "An investigation is cloaked in immunity because it is an essential step to instituting administrative proceedings." *Richardson-Tunnell*, 157 Cal. App.4th at 1062.

Plaintiffs do not dispute that § 821.6 immunity extends to investigations such as the investigations provided for under the Municipal Code for Police Regulated Occupations and Businesses. However, plaintiffs argue that § 821.6 immunity does not apply in this case because the officers were not truly investigating a crime they witnessed; a citation or arrest was never made or intended; and defendant Officers were acting outside the scope of their employment.

First, plaintiffs cite no legal authority that requires that the commission of a crime is a prerequisite or necessary component of an investigation. The right to conduct an inspection found in the Municipal Code at issue lists as its purpose and intent "to establish certain minimum standards . . . to protect the public order." MC § 33.3601. The right to inspection focuses primarily on identification of individuals and their compliance with the requirement of possession of a police permit. A citation would be warranted if a person operates a business or engages in an occupation without a police permit. MC § 33.0101. But the commission of a crime, or a citation or arrest are not necessary for an investigation to occur.

Second, plaintiffs allege that the investigations conducted under the authority of the Municipal Code did not result in any administrative proceedings and therefore, immunity does not exist. But immunity extends to investigations even if there is a later decision not to institute administrative proceedings or to initiate a prosecution. *Ingram v. Flippo* 74 Cal. App.4th 1280, 1293 (1999).

Third, as to the scope of public employment, "an employee is acting in the course and scope of his employment when he is engaged in work he was employed to perform, or when the act is incident to his duty and is performed for the benefit of his employer, not to serve his own purposes or convenience." *Richardson-Tunnell*, 157 Cal. App.4th at 1062 (citing *Mazzola v. Feinstein*, 154 Cal. App.3d 305, 311 (1984). Here, even taking plaintiffs' allegations as true, the investigation was carried out by police officers to ensure compliance with the Municipal Code,

and was not for the benefit or purposes of the individual defendants. "Whether the investigatory duties were carried out negligently, maliciously, or without probable cause, they were within the scope of employment for purposes of section 821.6." *Id.* at 1063 (citing *Baughman v. State*, 38 Cal. App.4th 182, 192 (1995).

Finally, much like plaintiff in *Richardson-Tunnell*, plaintiffs here contend that Civil Code § 1708.8 creates an exception to governmental investigatory immunity under § 821.6. All parties acknowledge that Civil Code section 1708.8 is outside the Tort Claims Act. "[T]he general rule is that the governmental immunity will override a liability created by a statute outside of the Tort Claims Act." *Gates v. Superior Court*, 32 Cal. App.4th at 510. Defendants argue that the officers were conducting an appropriate investigation under the Municipal Code and therefore, § 821.6 immunizes them against liability created by Civil Code §1708.8, absent an expression of legislative intent to the contrary. Plaintiffs are unable to point to language within § 1708.8 or its legislative history to demonstrate any intent to create governmental liability under the statute. Indeed, § 1708.8(g) provides an exemption for governmental liability:

> This section shall not be construed to impair or limit any otherwise lawful activities of law enforcement personnel or employees of governmental agencies or other entities, either public or private who, in the course and scope of their employment, and supported by an articulable suspicion, attempt to capture any type of visual image, sound recording, or other physical impression of a person during an investigation, surveillance, or monitoring of any conduct to obtain evidence of suspected illegal activity or other misconduct, the suspected violation of any administrative rule or regulation, a suspected fraudulent conduct, or any activity involving a violation of law or business practices or conduct of public officials adversely affecting the public welfare, health, or safety.

With this language, the statute specifically exempts investigations by law enforcement personnel conducted in the course and scope of their employment. Further, as the *Richardson-Tunnell* court concluded: "the exemption provision of Civil Code section 1708.8, subdivision (g) cannot be construed to impose liability upon a public entity where section 821.6 specifically affords immunity." 157 Cal. App.4th at 1065.

The § 821.6 immunity statute controls here because it is a specific statute that provides immunity to public employees who are engaged in investigative activities. Civil Code § 1708.8, on the other hand, is a general liability statute. A more specific statute prevails over a more

general statute. CODE CIV. PROC. § 1859. Additionally, § 1708.8(g) provides an express exemption for liability for investigations such as the one at issue here. Accordingly, defendants are immune from liability under § 1708.8 and plaintiffs' claim will be dismissed with prejudice.

### E. False Imprisonment

"False imprisonment under California law is the 'unlawful violation of the personal liberty of another.'" *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 757 (1997)). In order to allege false imprisonment, plaintiffs must set forth the elements for such a claim:"(1) the nonconsensual, intentional confinement of a person, (2) *without lawful privilege*, and (3) for an appreciable period of time, however brief." *Easton v. Sutter Coast Hospital*, 80 Cal. App. 4 th 485, 496 (Cal. Ct. App. 2000) (emphasis added). Where "confinement [is] pursuant to lawful process" however, there is no false imprisonment. *Asgari*, 15 Cal.4th at 757.

Defendants assert that Plaintiff's false imprisonment claim cannot survive because plaintiffs have failed to allege that the officers involved in the inspection acted without lawful privilege and cannot do so because the Municipal Code provides the legal authority to conduct the inspections. Although plaintiffs acknowledge that the officers had lawful authority to conduct the inspection under the Municipal Code, they argue that the officers unreasonably and unlawfully exceeded this authority by refusing to allow the adult entertainers to exit the venues for a prolonged period, requiring the them to stay in the dressing and locker rooms, subjecting them to interrogations, photographing them while semi-nude, and making disparaging remarks. These allegations are insufficient to show that the officers acted without lawful privilege, and as a result, are not sufficient to adequately plead false imprisonment.

Plaintiffs' claim for false imprisonment will be dismissed with leave to amend.

### F. The Bane Act Claim

In the FAC, plaintiffs attempt to allege a violation of the Bane Act, California Civil Code § 52.1. The Act was originally instituted as a means to curb the rising tide of hate crimes, and was meant to address interferences with constitutional rights involving more egregious conduct than mere negligence. *See Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 958 (Cal.

Ct. App. 2012); *see also Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338 (1998). The Bane Act prohibits interference or attempted interference with a person's rights under federal or California law by "threats, intimidation, or coercion with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state" CIV. CODE § 52.1(a).

Plaintiffs contend the individual officers violated § 52.1 by interfering with their right to be free from an unreasonable search "accompanied by the coercion and intimidation involved with the Defendants' taking of semi-nude photos, demeaning and arrogant speech, and orders to expose various body parts for photographing." (Opp. at 10)

In order to obtain a police permit, plaintiffs were required, *inter alia*, to provide their full true names; residential address and telephone number; applicant's height, weight, color of eyes and hair; "photographs as specified by the Chief of Police"; and fingerprints. (MC 33.3604) The inspections required by § 33.0103 are intended to verify compliance with the Municipal Code. Plaintiffs' allegation do not, as currently pleaded, suggest that the inspections were anything other than lawful, and plaintiffs do not adequately allege how the acts complained of were coercive or intimidating.

Further, to the extent plaintiffs suggest the Bane Act is properly alleged based on certain officers "demeaning and arrogant" speech, the allegation is also insufficient.

> Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat.

CAL. CIV. CODE § 52.1(j).

Here, plaintiffs allege nothing more than "demeaning and arrogant speech" on the part of certain officers. While likely unprofessional and offensive, such vague comments do not suggest coercion or intimidation, much less a threat of violence. Accordingly, the Bane Act cause of action will be dismissed with leave to amend.

///

### G.     Violation of the Fourth Amendment, Search and Seizure

Defendants argue that plaintiffs were not searched or seized in violation of the Fourth Amendment because the inspections conducted by the officers were made pursuant to municipal statutory authority and were conducted reasonably within that authority. Essentially, defendants assert that because adult entertainment venues are part of a pervasively regulated industry, police have the authority to conduct reasonable, warrantless searches of the businesses within that industry, and that plaintiffs and other adult entertainers agreed to these searches as a condition to receiving their adult entertainer permits. *Id*.

Although they accepted a police permit to work as an adult entertainer, and therefore consented to inspections by the City to ensure their continued compliance with the Municipal Code, plaintiffs contend they have not consented to the type of inspection alleged in that defendants exceeded the scope of that authority, and conducted the search in a way that deprived plaintiffs of their Fourth Amendment right to be free from unreasonable search and seizure. Plaintiffs' allegations that they were required to provide identification and permits, were subjected to the taking of photographs, and keeping the entertainers within the establishment until the inspections were completed, even taken as true, do not plausibly suggest a Fourth Amendment violation.

Plaintiffs also assert that the alleged search and seizures violate the Fourth Amendment because they were not based on probable cause and executed pursuant to a valid search warrant while at the same time acknowledging that "administrative searches of 'closely regulated' industries are one such exception and may be conducted without a warrant, so long as they meet certain standards of reasonableness." (Opp. at 10-11) In conclusory language, plaintiffs contend that "whether the Plaintiffs are engaged in a pervasively regulated industry or not . . . the Plaintiffs were detained for two hours and intimate parts of their bodies were photographed. This is not a reasonable inspection by any standard." (Opp. at 12) Plaintiffs offer no legal support for this position.

Defendants note that by obtaining a permit under the Municipal Code, the plaintiffs agreed to an inspection to ensure that plaintiffs are operating within the Municipal Code which

includes being detained during the inspection, interviewed and photographed. Plaintiffs assert that this argument is violative of the Unconstitutional Conditions Doctrine. (Opp. at 12) Under the doctrine of unconstitutional conditions, the Supreme Court has explained that "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely." *Palmer v. Valdez,* 560 F.3d 965 972 (9th Cir. 2009) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). "Specifically, the government cannot condition a benefit on a basis that infringes upon an individual's constitutionally guaranteed interest. The reasoning behind the doctrine is sound: A court cannot allow the government to accomplish through a condition something it cannot demand outright." *See id.* However, "as a necessary part of an unconstitutional conditions doctrine violation, Plaintiff must show that he has a constitutionally protected interest that would be impinged upon by the 'condition'" – in this case, the inspections. *Porto v. City of Laguna Beach*, 2012 WL 3810475 (C.D. Cal. 2012)(quoting *Bingham v. Holder*, 637 F.3d 1040, 1045 (9th Cir. 2011)(quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Here, plaintiffs have not adequately alleged that inspections under the Municipal Code amounts to a waiver of any constitutional right. Accordingly, the unconstitutional conditions doctrine does not apply.

Even when construed in the light most favorable to plaintiffs, the facts provided are insufficient to allege that the officers exceeded the scope of the inspection permitted by the Municipal Code, and therefore, to state a claim for a violation of plaintiffs' Fourth Amendment search and seizure rights. This claim will be dismissed with leave to amend.

**H.     Negligence**

Defendants argue that plaintiffs cannot assert a claim against the City based on negligent failure to train or supervise as such a claim is not cognizable under California law." Plaintiff concedes this point. (Pl.'s Opp'n. 13) ("Plaintiffs agree that Defendants City and Zimmerman cannot be directly liable for a negligence claim based on failure to train; however, Plaintiffs' claims against these Defendants based on failure to train are properly alleged under section 1983 as addressed below"). Thus, plaintiffs claim for negligence against Zimmerman and the City is

dismissed with prejudice.

### 1. Monell Claims for Failure to Train and Ratification

In a *Monell* claim, there are three ways to show a policy or custom of a municipality: (1) by showing a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity"; (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City and County of San Francisco*, 308 F. 3d 968, 984-85 (9th Cir. 2002).

#### a. Failure to Train

A plaintiff may establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–91 (1989). Such a showing depends on three elements: (1) the training program must be inadequate "'in relation to the tasks the particular officers must perform'"; (2) the city officials must have been deliberately indifferent "'to the rights of persons with whom the [local officials] come into contact'"; and (3) the inadequacy of the training "must be shown to have 'actually caused' the constitutional deprivation at issue." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations omitted); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359–60 (2011) ("To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' [ ] Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" (quoting *City of Canton*, 489 U.S. at 388)).

"Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*,

131 S. Ct. at 1359. The Supreme Court has explained that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (internal quotation marks and citation omitted). And of course, to plead a policy, custom, or failure to train, a plaintiff must plead specific plausible facts. *See Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Twombly*, 550 U.S. at 555.

Plaintiffs contend that the following allegations are sufficient to assert a failure to train claim: (1) Defendant Zimmerman was a "policy maker;" (2) Defendants, as a matter of custom, practice and policy, failed to maintain adequate and proper training as to the constitutional rights of citizens; (3) Defendants knew or should have known that the inadequate training program was likely to result in a deprivation of the rights of citizens to be free from unreasonable searches and seizures; (4) the inadequate training was the cause of the deprivation of plaintiffs' constitutional rights; (5) Defendants personally ratified the acts that led to the deprivation of plaintiffs' constitutional rights; and (6) Defendant Zimmerman made a conscious and deliberate choice to approve the constitutional violations.

As noted above, detailed factual allegations are not necessary to withstand a motion to dismiss; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). In order to plead a viable *Monell* claim for inadequate training, plaintiffs must plead facts showing deliberate indifference and that the failure to train reflects a deliberate or conscious choice to endanger constitutional rights. Here, plaintiffs' allegations are nothing more than the mere tracking of the elements of the claims – legal conclusions cloaked as facts. And as discussed above, plaintiffs have not alleged a viable cause of action for a violation of the Fourth Amendment. Thus, the allegations, even when taken as true, are devoid of factual content that would move the allegations into the range of plausible.

/ / /

### b. Ratification

Section 1983 liability may be imposed for a supervisor's "ratification" or approval of a subordinate's unconstitutional conduct, *i.e.,* ratification of the decisions of a subordinate by an official with final decision-making authority can also be a policy for purposes of municipal liability under § 1983. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Both a municipality and a municipal officer in his official capacity, acting as a policymaker, "may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004); *Larez v. City of Los Angeles*, 946 F.3d 630, 645-46. To constitute ratification, the official must "approve a subordinate's decision and the basis for it before the policymaker will be deemed to have ratified the subordinate's discretionary decision." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) (emphasis in original). "[A] policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

Just as plaintiffs' failure to train claim is inadequately pleaded, so too is their claim for ratification. Plaintiffs have failed to allege facts showing that a final policymaker knew that the police officers engaged in unconstitutional conduct and officially approved that conduct. Accordingly, the *Monell* failure to train and ratification claims will be dismissed with leave to amend.

### I. Injunctive Relief

As defendants note and plaintiffs acknowledge, injunctive relief is not a claim but rather a request for a specific form of relief. *See Saridakis v. JPMorgan Chase Bank*, 2015 WL 570116, *2 (C.D. Cal. 2015). Because they have not sufficiently alleged any cause of action for which such relief is available, plaintiffs request for injunctive relief is dismissed without prejudice.

/ / /
/ / /
/ / /
/ / /
/ / /

## IV. Conclusion

Based on the foregoing, defendants' motion to dismiss is **GRANTED** without prejudice as to all claims except negligence and violation of § 1708.8, which are dismissed with prejudice. If plaintiffs intend to file an amended complaint, they shall do so within 10 days of the filing of this Order.

**IT IS SO ORDERED.**

DATED: March 16, 2015

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. RUBEN B. BROOKS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL