UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>　　　　　　　Defendants; | Case No.: 14cv1941-L(AGS) |
| TANYA A., et al.,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>　　　　　　　Defendants. | Case No.: 14cv1942-L(AGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

　　　　Pending before the Court are Plaintiffs' motions for partial judgment on the pleadings. The motions, filed in the above-captioned related cases, are identical. Defendants filed oppositions and Plaintiffs replied. The Court decides this matter on the briefs without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, Plaintiffs' motions are granted in part and denied in part.

I. **BACKGROUND**

Plaintiffs were entertainers at Cheetahs and Expose, adult entertainment establishments in San Diego. Adult entertainment establishments are regulated by the San Diego Police Department. San Diego Municipal Code ("SDMC") §33.3601.[1] A police permit is required to operate an adult entertainment establishment or perform as an adult entertainer. (SDMC §§33.3603 & 33.3604.) Section 33.0103 (the "Inspection Provision") confers authority on police officers to inspect police-regulated businesses, including adult entertainment establishments. (*See also* First Am. Compl., 14cv1941, doc. no. 21 ("Doe Compl.") at 5-6; Second Am. Compl., 14cv1942, doc. no. 24 ("Tanya A. Compl.") at 6.)

According to Plaintiffs, ostensibly based on the Inspection Provision, on July 15, 2013 and March 6, 2014, armed police officers wearing bullet proof vests raided Cheetahs and Expose. (Doe Compl. at 3; Tanya A. Compl. at 4.) The officers interrogated the entertainers and photographed each in a nearly nude state claiming they had to document their tattoos. (Doe Compl. at 3-4; Tanya A. Compl. at 4-5.) The entertainers who objected to detention or photographs were threatened with arrest, and armed officers were posted at the doors to prevent the entertainers from leaving. (Doe Compl. at 3-4; Tanya A. Compl. at 4-5.) They were detained for one hour or more. (Doe Compl. at 4; Tanya A. Compl. at 5.)

Based on these incidents, two nearly identical actions[2] were filed in state court alleging violation of federal constitutional rights, as well as other causes of action.

---

[1] The Court takes judicial notice of the San Diego Municipal Code, which is referenced in the operative complaints. *See Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006).

[2] Two additional related actions were filed in this Court, *Red Eyed Jacks Sports Bar, Inc. d/b/a/ Cheetah's Nightclub,* 14cv823, and *Suzanne Coe v. City of San Diego et al.,* 16cv1447. They have been dismissed, and are therefore not addressed in this order.

Defendants removed both actions to this Court based on federal question jurisdiction under 28 U.S.C. §§1331 and 1441. The actions were coordinated for pretrial proceedings.

Pending before the Court are Plaintiffs' motions for partial judgment on the pleadings. Plaintiffs seek judgment on their claims that the Inspection Provision on its face violates the First and Fourth Amendments of the United States Constitution.[3]

## II. DISCUSSION

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). "Judgment on the pleadings is properly granted when . . . there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). However, "a plaintiff is not entitled to judgment on the pleadings if the defendant's answer raises issues of fact or affirmative defenses." *Pit River Tribe v. Bureau of Land Mgmt,* 793 F.3d 1147, 1159 (9th Cir. 2015) (citation omitted); *see also Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989) ("[A] plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery. Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings.") (citations omitted).

---

[3] The Fourteenth Amendment protects First and Fourth Amendment rights against violation by state, as opposed to federal, actors. *See Duncan v. Louisiana*, 391 U.S. 145, 148 (1968); *Albright v. Oliver*, 510 U.S. 266, 272-73 (1994). When "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment," and "not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright*, 510 U.S. at 273 (citation and internal quotation marks omitted).

Analysis of the pleadings under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6). *Chavez*, 683 F.3d at 1108. A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A plaintiff cannot prevail where the complaint lacks a cognizable legal theory. *See Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks and citation omitted). Alternatively, a plaintiff cannot prevail if the complaint presents a cognizable legal theory, yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Plaintiffs allege that the Inspection Provision is unconstitutional on its face. (Doe Compl. ¶¶35 & 129-32; Tanya A. Compl. ¶36.) In their opposition, Defendants counter that "the Court cannot grant the motion[s] given that there are clearly multiple factual disputes by and between the parties as to how the inspections at issue were conducted." (Opp'n, 14cv1941, doc. no. 70 ("Opp'n") at 3.) "A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel,* __ U.S. __; 135 S.Ct. 2443, 2449 (2015). Accordingly, a facial attack does not raise questions of fact related to the enforcement of the statute in a particular instance. *Forsyth County, Ga. v. Nationalist Movement,* 505 U.S.123, 133 n.10 (1992) ("Facial attacks on the discretion granted a decisionmaker are not dependent on the facts surrounding any particular permit decision"). Defendants' denials and admissions of Plaintiffs' factual allegations regarding the searches conducted at Cheetahs and Expose are irrelevant to the facial attack claims. In their answers, Defendants do not dispute this. They assert that the facial attack allegations "contain[] legal conclusions, legal argument, and questions of law to be determined solely by the Court, to which no response is required." (Ans. to Pl.'s First Am. Compl., 14cv1941, doc. no. 42 ("Doe Answer") ¶¶37[4] & 129-32; Ans. to Pls' Second Am. Compl., 14cv1942, doc. no. 25 ("Tanya A. Answer") ¶36.)

---

[4] Doe's first amended complaint (doc. no. 21) and Defendants' answer (doc. no. 42) contain paragraph numbering errors. Upon review of the entire first amended complaint

Further, Defendants maintain that a motion for judgment on the pleadings cannot be granted if affirmative defenses are asserted. They proffer this contention in a conclusory fashion without argument to show how any of their defenses could defeat Plaintiffs' facial attack. (Opp'n at 2-3.) Upon review of the operative answers in both actions, none of the affirmative defenses is sufficient to preclude deciding Plaintiffs' motions on the merits.

Defendants raised lack of subject matter jurisdiction and standing as affirmative defenses. (Doe Ans. ¶¶ 135 & 137; Tanya A. Ans. at 37 ¶¶ 1 & 3; *see* Opp'n at 3.) Because Plaintiffs allege violations of federal law, the Court has federal question jurisdiction under 28 U.S.C. §1331.[5]

Standing under Article III "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks and citation omitted, emphasis in original). A plaintiff must show she has suffered an injury in fact, the injury is fairly traceable to the challenged action of the defendant, and it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (internal quotation marks and citations omitted). "In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 764 (1988), quoting *Freedman v. Maryland,* 380 U.S. 51, 56 (1965). "This

---

and Defendants' entire answer, it is apparent that Paragraph 37 of the answer responds to Paragraph 35 of the first amended complaint.

[5] This was the basis for Defendants' removal of the actions to federal court. (*See* case no. 14cv1941 and 14cv1942, each doc. no. 1.)

exception from general standing rules is based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Forsyth County,* 505 U.S. at 129.

Plaintiffs, as adult entertainers, are directly affected by the Inspection Provision, as they are required to be licensed, and are therefore subject to the Inspection Provision. (*See* Doe Compl. ¶¶6 & 54; Tanya A. Compl. ¶¶6-8 & 56; *cf.* SDMC §§ 33.0101(b) & (c), 33.3602 & 33.3604.) Defendants' argument that there is a factual dispute whether Plaintiffs' constitutional rights were violated during the searches at issue (Opp'n at 3) is irrelevant to the facial attack claims as well as to Plaintiffs' standing to assert them.

Defendants also alleged failure to state a claim. (Doe Ans. ¶136; Tanya A. Ans. at 37 ¶2.) They had moved twice for dismissal on this ground in each case, and the Court issued orders which allowed the facial attack claims to proceed. (*See* case no. 14cv1941 docs. no. 18 & 35; case no. 14cv1942 docs. no. 11 & 23.) The affirmative defenses of failure to state a claim therefore do not preclude Plaintiffs' motions. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294-95 (7th Cir. 1989) (affirmative defenses restating a previously denied defense motion are meritless).

Next, Defendants alleged as an affirmative defense that Plaintiffs are not entitled to declaratory or injunctive relief. (Doe Ans. ¶147; Tanya A. Ans. at 38 ¶13.) Affirmative defenses are subject to the pleading requirements of Federal Rules of Civil Procedure. *Heller Fin.,* 883 F.2d at 1294. Defendants alleged no facts in support of their defense, and asserted no argument in the opposition brief. Defendants' answers with their bare legal conclusions are insufficient to preclude ruling on the merits of Plaintiffs' motions. Moreover, Plaintiffs seek injunctive and declaratory relief as remedies for their claims. (Doe Compl. ¶¶131-32; Tanya A. Compl. at 17 ¶1.) The conclusory defense that Plaintiffs are not entitled to declaratory or injunctive relief is a variant of Defendants' contention in their answers that Plaintiffs failed to state a claim, and is insufficient for the same reasons.

Finally, in their opposition Defendants referenced statute of limitations, res judicata and qualified immunity as affirmative defenses. (Opp'n at 3.) "Qualified immunity shields [government] officials from money damages." *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011); *see also Pearson v. Callahan,* 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages" (quotation marks and citation omitted)). Accordingly, it does not apply when, as here, the plaintiff requests declaratory relief. *See Pearson*, 555 U.S. at 242. Statute of limitations and res judicata defenses are raised only in the most cursory and conclusory manner. (*See* Doe Ans. ¶156; Tanya A. Ans. at 39 ¶22.) They are not supported by facts or argument in the opposition to Plaintiffs' motions. (*See* Opp'n at 3.) They are therefore insufficient to preclude addressing Plaintiffs' motions on the merits. *See Heller Fin.,* 883 F.2d at 1294.

Defendants do not reference any other affirmative defenses in their opposition. The remaining defenses asserted in their answers are directed toward the conduct at issue and damages, and are therefore irrelevant to the facial attack issues presented in Plaintiffs' motions.

### A.  FIRST AMENDMENT

Nude dancing is expressive conduct protected by the First Amendment. *Talk of the Town v. Las Vegas,* 343 F.3d 1063, 1068 n.11 (9th Cir. 2003); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) ("outer ambit of the First Amendment protection"). Plaintiffs contend that the Inspection Provision on its face violates the First Amendment because it confers unbridled discretion on the Chief of Police regarding the scope and manner of inspections.

"Although facial challenges to legislation are generally disfavored, they have been permitted in the First Amendment context." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223 (1990).[6]

> It is settled by a long line of [Supreme Court] decisions . . . that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official - as by requiring a permit or license which may be granted or withheld in the discretion of such official - is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*Id.* at 226 (internal quotations omitted, brackets and first ellipsis added). While prior restraints on speech are not unconstitutional *per se*, they bear "a heavy presumption against [their] constitutional validity." *Id.* at 225 (internal quotation marks and cition omitted). "[T]he mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood*, 486 U.S. at 757.

"Therefore, a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *City of Lakewood*, 486 U.S. at 759.

> This is not to say that . . . a speaker may challenge as censorship any law involving discretion to which it is subject. The law must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks.

---

[6] *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215 (1990), is a plurality decision. At least six justices were in agreement as to those parts of the plurality opinion which are referenced herein. *See id.* at 238 (Justice Brennan's concurring opinion in which Justice Marshall and Justice Blackmun joined).

*Id.* "[A] sanction imposed pursuant to a generally applicable law does not trigger First Amendment scrutiny, even where the sanction results in a burden on expression." *Talk of the Town,* 343 F.3d at 1069 (discussing *Arcara v. Cloud Books, Inc.,* 478 U.S. 697 (1986)) (footnote omitted). A plaintiff may not "use the First Amendment as a cloak for obviously unlawful . . . conduct." *Arcara*, 478 U.S. at 705 (quoted in *Talk of the Town,* 343 F.3d at 1070).) To warrant a facial challenge, the burden placed on those engaged in expressive activity must be more than "merely the incidental result" of enforcing a generally applicable law. *See Talk of the Town,* 343 F.3d at 1072.

For example, in *Talk of the Town v. Las Vegas,* a facial challenge did not lie against the city, where the city suspended an adult entertainment license for violating the generally applicable liquor license law. 343 F.3d 1063. "[T]he burdening of expressive conduct [was] merely the incidental result of the City's clear authority to enforce its generally applicable liquor license requirement." *Id.* at 1072. On the other hand, in *FW/PBS, Inc. v. City of Dallas*, a facial challenge could proceed, because the certificate of occupancy and inspection requirement, which applied to all businesses, was more onerous for adult entertainment businesses. An inspection was required not only upon changing locations or structural changes to the premises, but also upon each renewal the adult entertainment license. 493 U.S. at 224-25.

The Inspection Provision at issue here is a law of general application. It applies to all police-regulated businesses listed in Chapter 3 Article 3 of the SDMC. SDMC §33.0101. In addition to adult entertainment establishments, the list includes auto dismantlers, promoters, ticket brokers, swap meets, holistic health practitioners, etc. *Id.* §§33.0701-33.4401. Section 33.0103 was not enacted to suppress the content or viewpoint of the speech associated with adult entertainment.

However, Plaintiffs contend that because the Inspection Provision does not delimit the Police Chief's discretion over the manner and scope of inspections, it could be used to single out adult entertainment establishments for harassment. (*See* Mot. at 8. 14cv1941, doc. no. 66 ("Mot").) Most other police-regulated businesses are not engaged in

9

protected speech activity, and do not operate by staging shows. Plaintiffs argue that on its face, the Inspection Provision does not preclude the Chief of Police from using inspections as a means of disrupting adult entertainment businesses by interfering with performances, and that this power has a chilling effect on the exercise of First Amendment rights. As a threshold matter, this is sufficient for Plaintiffs to establish a nexus between the Inspection Provision and protected speech to raise a facial challenge.

Defendants counter that the First Amendment claim should be denied because the Inspection Provision is a content-neutral, legitimate time, place, or manner restriction. It is undisputed that the City regulates adult entertainment to further significant governmental interests. SDMC §33.3601. This alone does not dispose of a facial challenge, however.

> [T]the city may require periodic licensing, and may even have special licensing procedures for conduct commonly associated with expression; but the Constitution requires that the city establish neutral criteria to insure that the licensing decision is not based on the content or viewpoint of the speech being considered.

*City of Lakewood,* 486 U.S. at 760. "A government regulation that allows arbitrary application is inherently inconsistent with a valid time, place and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Forsyth County,* 505 U.S. at 130 (internal quotation marks and citation omitted). Furthermore, "even if the government may constitutionally impose content-neutral prohibitions on a particular manner of speech, it may not *condition* that speech on obtaining a license or permit from a government official in that official's boundless discretion." *City of Lakewood,* 486 U.S. at 764 (emphasis in original). Here, the permits for adult entertainment are conditioned on compliance with the Inspection Provision, which states that "[t]he right of reasonable inspection to enforce the provisions of this Article is a *condition* of the issuance of a police permit." SDMC §33.0103(c) (emphasis added).

To prevail on a facial challenge, a plaintiff must show that there is nothing in the challenged provision to prevent the decisionmaker from exercising discretion in a manner that favors some speakers over others based on the content of their speech. *Forsyth County,* 505 U.S. at 133 n.10. "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective and definite standards to guide the licensing authority." *Id.* at 131 (internal quotation marks and citations omitted).

In its entirety, the Inspection Provision states:

> (a) The Chief of Police shall make, or cause to be made, regular inspections of all police-regulated businesses. Any peace officer shall have free access to any police-regulated business during normal operating hours. It is unlawful for any permittee or employee to prevent or hinder any peace officer from conducting an inspection.
>
> (b) Any police code compliance officer assigned by the Chief of Police to conduct inspections shall have free access to any police-regulated business during normal operating hours. It is unlawful for any permittee or employee to prevent or hinder any police code compliance officer from conducting an inspection.
>
> (c) The right of reasonable inspection to enforce the provisions of this Article is a condition of the issuance of a police permit. The applicant or permittee shall acknowledge this right of inspection at the time of application. Refusal to acknowledge this right of inspection is grounds for denial of the application. The right of inspection includes the right to require identification from responsible persons or employees on the premises. The refusal to allow inspection upon reasonable demand or the refusal to show identification by responsible persons or employees is grounds for the suspension, revocation, or other regulatory action against the police permit.

The Inspection Provision provides for "regular inspections" by allowing "free access to any police-regulated business during normal operating hours." SDMC §33.0103(a); *see also id.* §33.0103(b). It further characterizes the Chief of Police's authority as "[t]he right

of reasonable inspection to enforce the provisions of this Article."[7] *Id.* §33.0103(c). The provision therefore specifies the place (business premises), time (normal operating hours), purpose (to enforce certain Municipal Code provisions), and requires that inspections be "regular." It is unclear whether the regularity refers to time intervals, or the manner of inspection. Further, the provision qualifies the government's right as a right to reasonable inspections, and requires permitees to grant free and unhindered access to the enforcement officers. As written, the provision does not define the manner or scope of the inspections.

In evaluating the facial challenge, the provision must be construed in context:

> When a state law has been authoritatively construed so as to render it constitutional, or a well-understood and uniformly applied practice has developed that has virtually the force of a judicial construction, the state law is read in light of those limits. That rule applies even if the face of the statute might not otherwise suggest the limits imposed. Further, [the court] will presume any narrowing construction or practice to which the law is fairly susceptible.

*City of Lakewood*, 486 U.S. at 770 n.11 (internal quotation marks and citations omitted). Defendants do not contend that the Inspection Provision has been authoritatively construed, or that that there is a well-understood and uniformly applied practice. Instead, they offer that the Inspection Provision should be construed in light of other Municipal Code provisions. (Opp'n at 13, citing SDMC §§11.0201, 11.0206, 12.0101, 12.0102, 12.0103 & 12.0104; *see also id.* at 12-13.)

Specifically with respect to the power to inspect property, the code provides that the officials

> are authorized to enter upon any property or premises to ascertain whether the provisions of the Municipal Code or applicable state codes are being obeyed, and to make any examinations and surveys as may be necessary in the performance of their enforcement duties. These may include the taking

---

[7] "Article" refers to Article 3, "Police Regulated Occupations and Businesses."

of photographs, samples or other physical evidence. All inspections, entries, examinations and surveys shall be done in a reasonable manner.

SDMC §12.0104. To the extent this provision may be in conflict with the Inspection Provision, "the more restrictive provision governs." *Id.* §11.0206. All provisions are construed "with a view to effect its objects and to promote justice." *Id.* §11.0201.

The additional provisions cited by Defendants reinforce the City's right to inspect for purposes of enforcing the Municipal Code provisions. SDMC §§11.0201, 12.0101, 12.0102 & 12.0104. Although section 12.0104 describes some of the methods the police may use to conduct the inspection (taking photographs, samples and physical evidence), the actual manner and scope of inspection are left to the officers' determination of what is reasonable. Where it is within the government official's discretion to decide what is reasonable under the ordinance imposing a prior restraint, "it simply cannot be said that there are any narrowly drawn, reasonable and definite standards guiding [the official's] hand . . .." *Forsyth County,* 505 U.S. at 132 (internal quotation marks and citations omitted).

The Inspection Provision, as written and construed in context of the Municipal Code sections referenced by Defendants, leaves to the Chief of Police's discretion to determine how to conduct inspections, whether the inspections should entail interrupting performances, detaining individuals on the premises, and any other aspect of the scope or manner of inspections. The question whether the police have in fact used the Inspection Provision for improper purposes is irrelevant to the facial challenge.

> [T]he success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so.

*Forsyth County* at 133 n.10. If the statute does not "prevent[] the official from encouraging some views and discouraging others through the arbitrary application of" the statute, the statute is unconstitutional. *Id.* at 133. The Inspection Provision does not

prevent the Chief of Police from using inspections as a means of harassing and discouraging adult entertainment businesses, and therefore violates the First Amendment on its face.

### B. FOURTH AMENDMENT

Plaintiffs also claim the Inspection Provision violates the Fourth Amendment on its face because it allows for unreasonable warrantless searches. "[F]acial challenges can be brought under the Fourth Amendment." *Patel*, 135 S.Ct. at 2447. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.'" *Id.* at 2451-52 (quoting U.S. Const. IVth Amend.). "[S]ubject only to a few specifically established and well-delineated exceptions," warrantless searches are "*per se* unreasonable." *Id.* at 2452 (internal quotation marks and citation omitted, emphasis in original). "This rule applies to commercial premises as well as to homes." *Id.* (internal quotation marks and citations omitted). An administrative search, *i.e.*, a search where "special needs make the warrant and probable-cause requirement impracticable, and where the primary purpose of the searches is distinguishable from the general interest in crime control," may be exempt from the warrant requirement under certain conditions. *Id.* (internal quotation marks, ellipsis and citations omitted); *see also id.* at 2452-53, 2456. The parties do not disagree whether searches pursuant to the Inspection Provision constitute administrative searches.

"[W]hen addressing a facial challenge to a statute authorizing warrantless searches, the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant," for example where a warrantless search is permitted due to exigent circumstances or consent. *Id.* at 2451. Defendants argue that Plaintiffs' motion under the Fourth Amendment should be denied, because the inspections at issue were consensual. (Opp'n at 7.) The Inspection Provision states, "The right of reasonable inspection to enforce the provisions of this Article is a condition of the issuance of a police permit. The applicant or permittee shall acknowledge this right of inspection at the time of application." SDMC §33.0103(c) (original emphasis omitted). "[R]efus[al]

to consent to inspection pursuant to Section 33.0103" is grounds to deny a permit application. *Id.* §33.0305(d).

On a facial challenge, the Court "will presume any narrowing construction or practice to which the law is fairly susceptible." *City of Lakewood*, 486 U.S. at 770 n.11 (internal quotation marks and citations omitted). Pursuant to the plain terms of the Municipal Code, everyone who holds an adult entertainment license has consented to administrative searches under the Inspection Provision. Plaintiffs do not address the issue of consent.

For the foregoing reasons, Plaintiffs' motions for judgment on the pleadings on the claim that the Inspection Provision on its face violates the Fourth Amendment is denied. Denial is without prejudice to raising the facial challenge again, supported by adequate briefing.

### C. REQUEST FOR PARTIAL JUDGMENTS

Plaintiffs prevailed on their claim that the Inspection Provision violates the First Amendment on its face. With their motions, Plaintiffs do not seek to address the captioned actions in their entirety. The facial attack under the First Amendment was asserted as a part of the first and tenth causes of action in case no. 14cv1941, and part of the first cause of action in case no. 14cv1942. Furthermore, Plaintiffs do not seek injunctive relief, but request a partial judgment in each case finding that the Inspection Provision is unconstitutional on its face. (*See, e.g.,* Reply at 9, 14cv1941, doc. no. 71 ("Reply").)

Partial judgments are disfavored. *See* Fed. R. Civ. Proc. 54(b); *Reiter v. Cooper*, 507 U.S. 258, 265 (1993); *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005).

Federal Rule of Civil Procedure 54(b) provides:

> Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim relief . . ., the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay. . . .

The power to enter partial final judgment "is largely discretionary, to be exercised in light of judicial administrative interests as well as the equities involved, and giving due weight to the historic federal policy against piecemeal appeals." *Reiter*, 507 U.S. at 265 (1993) (citations and quotation marks omitted). In *Morrison-Knudsen Co., Inc. v. Archer*, the Ninth Circuit elaborated on the requirements of Rule 54(b):

> Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties. The trial court should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order. Those findings should include a determination whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court. A similarity of legal or factual issues will weigh heavily against entry of judgment under the rule, and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings.

655 F.2d 962, 965 (9th Cir. 1981); *see also Wood*, 422 F.3d 873.

Plaintiffs have not addressed the absence of any just reason for delay and whether, upon a partial judgment, the appellate court would be required to address legal or factual issues that are similar to those contained in the claims which would remain before this Court. Without facts or argument to make a determination of these issues, the Court may not enter a partial judgment. *See* Fed. R. Civ. Proc. 54(b). The Court therefore declines to enter partial judgments at this time. However, the First Amendment facial attack claims are resolved for purposes of further proceedings.

### III. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiffs' motions are granted in part and denied in part. The First Amendment facial attack claims are hereby resolved in Plaintiffs' favor for

16

purposes of all further proceedings.  In all other respects, Plaintiffs' motions for partial judgments on the pleadings are denied.  No judgment shall be entered at this time.

**IT IS SO ORDERED.**

Dated:  March 16, 2018

_____
Hon. M. James Lorenz
United States District Judge